UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARK T. MOTLEY, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>RYDER VEHICLE SALES, )<br>LLC, a Florida limited )<br>liability company, )<br>)<br>*Defendant*. ) | Civil Action No. 3:21-cv-388 |

## COMPLAINT

The Plaintiff, Mark T. Motley, by counsel, for his Complaint against Defendant, Ryder Vehicles Sales, LLC, a Florida limited liability company, alleges as follows:

NATURE OF CLAIMS

1. This lawsuit arises out of the breach of a lease of real estate made by and between the Plaintiff, Mark T. Motley ("Motley"), and the Defendant, Ryder Vehicle Sales, LLC ("Ryder"), for certain real property located in the City of Richmond and the County of Henrico, Virginia. By letter dated March 22, 2021, Ryder repudiated and breached the lease without justification or excuse. On or about March 22, 2021, Ryder, by and through its Authorized Member, Ryder Truck Rentals, Inc. ("RTR") issued a check to Motley in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($20,833.33) for payment of rent under said lease. On or before April 2, 2021,

1

Ryder, acting through its agent, RTR, in bad faith placed a stop-payment order on that rent check, causing the drawee depository to refuse payment on the check. As a result of Ryder's repudiation and breach of the Lease and stop payment order, Motley has suffered significant money damages and has been turned out of possession of the real estate.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00.

3. Venue in this judicial district and division is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 3(c) because a substantial part of the events or omissions giving rise to the claim occurred in this district and division and the property that is the subject of the action is situated in this district and division.

## PARTIES

4. Motley is a U.S. citizen and resident of the City of Richmond, Virginia.

5. Ryder is a limited liability company organized under the laws of the state of Florida. On information and belief, as of the filing date of this Complaint, Ryder has no members who are residents of the Commonwealth of Virginia. RTR is publicly listed as Ryder's Authorized Member with the Florida Secretary of State. RTR is a member and manager of Ryder and acted

with authority as Ryder's agent in issuing rent checks to Motley and in placing a stop-payment order on a check to Motley dated March 22, 2021.

FACTS

6. On or about April 16, 2020, Motley and Ryder entered into a lease agreement for approximately two and 7/10 acres of land located at 4400 West Broad Street in the City of Richmond, and extending into the County of Henrico, Virginia (the "Premises"). On or about August 5, 2020, Motley and Ryder entered into a first amendment to the initial lease agreement. On or about September 1, 2020, Motley and Ryder entered into a second amendment to the lease agreement. A true copy of this lease agreement and its addenda are attached hereto as Exhibit A and are referred to herein collectively as the Lease Agreement.

7. The Lease Agreement contemplated that Motley, as lessor, would complete certain described "Landlord's Work." The Lease Agreement (at its exhibit B) describes the Landlord's Work requirement as follows:

> Landlord to remove all buildings and structures on the Premises at Landlord's sole expense to allow for a vacant parcel for Tenant's Intended Use. Landlord shall also repair and replace deteriorated pavement areas, at Landlord's sole expense, in addition to and where needed as a result of Landlord's removal of buildings and structures from the Premises. In the event Landlord fails or otherwise does not wish to repair the Premises due to structure removal, Tenant shall have the right to self-perform and be reimbursed (or off-set against the next installment of rent) for the full cost of the such [*sic*] work.

> Landlord will install (at the cost to be equally split between Landlord and Tenant) perimeter fencing around portions of the Premises as the type of fencing and locations for installation are to be mutually agreed to by Tenant and Landlord. Location of

3

fencing, if any, fronting on West Broad Street, shall not block any adjacent tenant's view corridor nor be of a material that would negatively affect the appearance of the property which is located in a class "A" retail corridor. Upon Landlord's completion of installation of the approved perimeter fencing, Landlord will submit an invoice and reasonable back-up support documentation verifying the cost thereof, and Tenant shall within 30 days thereafter reimburse Landlord for 50% of the cost of the perimeter fence installation.

8. After the execution of the Lease Agreement, Motley demolished the existing structure on the Premises, paved the lot, and installed perimeter fencing, to accommodate Ryder's plan of development, all as contemplated by the "Landlord's Work" provision of the Lease Agreement. Except for a portion of the perimeter fencing that Ryder requested be left open, and which remained open by agreement, Motley completed all of the Landlord's Work set out in Exhibit B of the Lease Agreement.

9. Ryder took occupancy of the Premises in May 2020, began storing some equipment on the property, and placed signage on the side of the property facing West Broad Street.

10. Ryder retained the services of Kimley-Horn and Associates, Inc., an engineering firm, to prepare a plan of development for the Premises. On or about September 8, 2020, Ryder submitted that plan of development to the County of Henrico for approval.  On or about September 23, 2020, Henrico County approved Ryder's proposed plan of development.

11. After Henrico County had approved Ryder's proposed plan of development, Ryder sought to change the plan to make a portion of the

Premises' parking area a gravel lot rather than a paved lot. The Henrico County Planning Office advised Ryder that, for the proposed modification to be approved, Ryder also would have to modify the plan to include additional landscaping and fencing around the premises. Ryder's proposed modifications, and the additional landscaping and fencing, would result in extra cost and expense.

12. In an effort to allow Ryder to move forward with the project while ensuring that County standards were met, the Henrico County Planning Office offered Ryder the ability to "phase" the development of the Premises. Under the County's offer, Ryder's sales trailer and the part of the premises facing West Broad Street would be considered "Phase 1" while the rear portion of the Premises would be considered "Phase 2." The County, however, would not permit the use of "Phase 2" as a gravel storage lot until Ryder submitted a subsequent plan of development and the County approved it. Ryder accepted the County's offer, and the County approved construction plans for Phase 1 of the project on or about December 23, 2020.

13. Ryder, however, never submitted a request for a building permit for Phase 1, approval of which would have allowed construction onsite and the installation of Ryder's sales trailer. Ryder never submitted a plan of development for Phase 2 of the project. Ryder otherwise failed to take any other action necessary to seek those governmental approvals required in order to

permit Ryder to legally use and occupy the Premises for the Intended Use, as that term is used in the Lease Agreement.

14. On or about January 13, 2021, Ryder demanded that Motley contribute a sum in excess of Two Hundred Thousand Dollars ($200,000) toward the expense of Ryder's modified plan of development, as well as rent forbearance.

15. Motley rejected Ryder's demand.

16. By letter to Motley dated March 22, 2021 (the "March 22 Letter"), Ryder declared that Motley was in breach of Section 5 of the Lease Agreement. A true copy of the March 22 Letter is attached hereto as Exhibit B. Ryder's claims of breach in the March 22 Letter were specious, made in bad faith, and attributed contractual obligations to Motley that did not exist in the Lease Agreement. In the March 22 Letter, Ryder issued an ultimatum: If, by March 31, 2021, Motley had not agreed to pay for Ryder's modifications to its plan of development, on Ryder's terms, then "the Lease shall be deemed terminated as of such date …."

17. As he had done before, Motley rejected Ryder's demand. By letter dated March 31, 2021 (the "March 31 Letter"), Motley refuted Ryder's false claims of breach, noted that he had complied with all of the lessor's obligations in the Lease Agreement, and pointed out that the County of Henrico would not issue a certificate of occupancy unless and until Ryder applied for a building permit, a step that Ryder had never taken. (A true copy of the March 31 letter

is attached hereto as Exhibit C.) Motley further noted that Ryder's deeming the Lease Agreement terminated was a repudiation of the Lease Agreement. Motley invited Ryder immediately to retract its repudiation of the Lease Agreement, but Ryder did not do so.

18. Instead, Ryder, in bad faith, caused its agent, RTR, to place a stop-payment order on the check for the April rent payment. That check had been issued by RTR and drawn on RTR's bank account on or about March 22, 2021, and made payable to Motley or his order, in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($20,833.33). As a result of RTR's stop-payment order, the drawee bank refused payment on the check.

19. Ryder did not retract its repudiation of the Lease Agreement.

20. In the months of April and May 2021, Ryder made additional demands for Motley to contribute money and forego rent. Motley rejected these demands.

21. Ryder did not timely pay rent for May 2021.

22. On or about June 2, 2021, Motley advised Ryder that he would not entertain any more demands and that he intended to sue Ryder for breach of the Lease Agreement and for possession of the Premises. At that point, and although Ryder had refused to pay rent on the Premises since March 2021, Ryder began to deny that it had ever terminated the Lease Agreement.

23. On or about June 2, 2021, Ryder issued to Motley a check bearing the notation "May-June 2021 Rent" in the amount of Forty-One Thousand Six Hundred Sixty-Six and 66/100 Dollars ($41,666.66).

24. On June 9, 2021, Ryder advised Motley in writing that "Tenant will be moving forward to perform and pay all costs for the development of the Premises that remain to be completed to allow operations on the Premises as deemed necessary for the Tenant to operate at the Premises as permitted under the Lease, as required by the County, and as demanded by the Landlord."

### COUNT I: Breach of Lease.

25. The foregoing allegations are incorporated as if re-alleged herein.

26. Ryder's March 22 Letter notified Motley that Ryder was terminating the Lease Agreement effective March 31, 2021, unless Motley agreed to Ryder's demand that Motley contribute to Ryder's costs to develop the Premises. Ryder's March 22 Letter falsely stated that Motley was in breach of the Lease Agreement because a certificate of occupancy had not been delivered to Ryder to allow it to use and occupy the Premises. Ryder's March 22 Letter falsely stated that the Lease Agreement imposed upon Motley the obligation to satisfy all County of Henrico requirements at his sole cost and expense. On its face, the Lease Agreement imposes no such obligation.

27. Ryder did not apply for and did not use commercially reasonable efforts to pursue and obtain from the proper governmental authorities the required permits, licenses, approvals, permissions, or governmental authorizations necessary for Ryder to use and occupy the Premises. Ryder's

commercially reasonable efforts to obtain the necessary governmental authorizations were a condition precedent to Ryder's ability to terminate the Lease Agreement.

28. Motley's March 31 Letter to Ryder was written notice to Ryder that it was in breach of the Lease Agreement.

29. Motley's March 31 Letter to Ryder offered Ryder the opportunity to retract its repudiation of the Lease Agreement. Ryder did not retract its repudiation of the Lease Agreement but, instead, stopped payment on the check for the April 2021 rent.

30. Thereafter, Ryder conducted itself in a manner consistent with its repudiation. Ryder did not pay rent timely for the month of May 2021 and continued to demand monetary concessions from Motley that were not part of the Lease Agreement.

31. Ryder's actions and statements on and after March 22, 2021, were not clear, definite, absolute, and unequivocal in evincing its intent to honor its obligations under the Lease Agreement.

32. Despite its termination of the Lease Agreement, and notwithstanding Motley's written notice to Ryder that it had breached the Lease Agreement, Ryder has continued to insist on possession of the Premises. Its signage remains on the Premises and it has advised Motley that it intends to operate its business on the Premises.

33. Ryder is in default under the Lease Agreement and owes Motley (a) rent for each month in which Ryder unlawfully withholds possession of the Premises, and (b) following the delivery of possession of the Premises to Motley, rent for the remaining Initial Term of the lease (as that term is defined in the Lease Agreement) presently in the amount of One Million Eighty-Four Thousand Nine Hundred Fifteen and 33/00 Dollars ($1,084,915.33), less the aggregate reasonable rental value of the Premises as determined in accordance with Part 21 (A) (ii) of the Lease Agreement.

34. In reliance on the Lease Agreement, and in his performance of the Landlord's Work (as that term is defined in the Lease Agreement), Motley has suffered damages and has incurred costs and expenses in the amount of Two Hundred Thirty Thousand and 00/100 Dollars ($230,000.00).

35. In reliance on the Lease Agreement, and as a consequence of such reliance, Motley suffered damages because he paid Ryder's real estate brokerage commissions in advance in the amount of Thirty-Nine Thousand Four Hundred Twenty-Two and 46/100 Dollars ($39,422.46).

36. The Lease Agreement required Ryder to pay real estate taxes assessed against the Premises during the term of the lease, which Ryder has failed to pay and will continue to fail to pay during the remaining term of the lease. As a consequence, Motley has been damaged to date in the amount of Twenty-Nine Thousand Eight Hundred Ninety and 34/100 Dollars ($29,890.34), and anticipates incurring damages during the remaining lease

term of Sixty-Seven Thousand Seven Hundred Forty-Four and 00/100 Dollars ($67,744.00).

## COUNT II: Unlawful Detainer

37. The foregoing allegations are incorporated as if re-alleged herein.

38. Ryder's right to possession of the Premises expired on March 31, 2021, when Ryder repudiated and breached the Lease Agreement.

39. Notwithstanding Ryder's repudiation and breach of the Lease Agreement, and without Motley's consent, Ryder has continued to detain the possession of the Premises and has unlawfully withheld from Motley the possession of the Premises.

40. Motley is entitled, pursuant to Virginia Code § 8.01-124 (1950, as amended), to possession of the Premises.

## COUNT III: Bad-Faith Failure To Pay Negotiable Instrument

41. The foregoing allegations are incorporated as if re-alleged herein.

42. Ryder's agent and authorized representative, RTR, issued a check payable to Motley or his order in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($20,833.33) dated March 22, 2021, for payment of rent on the Premises for the month of April. Motley understood the check to be issued by RTR as agent for Ryder. Motley was the holder in due course of the check. Motley negotiated the check on March 30, 2021, by depositing it into his back account.

43. RTR's check was Ryder's unconditional promise to pay Motley the stated sum.

11

44. On or before April 2, 2021, Ryder in bad faith caused RTR to place a stop-payment order on the April rent check, causing the drawee depository to refuse payment on the check. The stop-payment order breached Ryder's unconditional promise to pay Motley the sum stated in the check.

45. As a result of Ryder's bad-faith conduct in causing a stop-payment order to be placed on the check, Motley has been damaged in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($20,833.33). Virginia Code Ann. § 8.01-27.1 (1950, as amended) entitles Motley to further and additional relief from Ryder's unlawful conduct, including (i) legal interest from the date of the check, (ii) the protest or bad check return fee charged to the Plaintiff by his bank, (iii) a processing charge of $ 50, and (iv) reasonable attorney's fees.

WHEREFORE, the Plaintiff, Mark T. Motley, by counsel, respectfully requests that this Court enter judgment in his favor and against the Defendant, Ryder Vehicle Sales, LLC, a Florida limited liability company, in the following manner:

a) That the Court hold that Defendant is unlawfully withholding possession of said premises from Plaintiff;

b) That the Court issue an order of possession ordering possession of the Premises returned to Plaintiff;

c) That Plaintiff have judgment against Defendant in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars

($20,833.33) for each month from April 1, 2021, plus interest determined in accordance with the Lease Agreement, until possession of the Premises is returned to Motley;

      d)     That Plaintiff have judgment against Defendant in the amount of One Million Eighty-Four Thousand Nine Hundred Fifteen and 33/00 Dollars ($1,084,915.33), less the aggregate reasonable rental value of the Premises as determined in accordance with Part 21 (A) (ii) of the Lease Agreement, and less any amount awarded for unpaid rent under paragraph (c), above;

      e)     That Plaintiff have judgment against Defendant in the amount of Three Hundred Sixty-Seven Thousand Fifty-Six and 80/100 Dollars ($367,056.80) for his other damages suffered as a consequence of Defendant's breach of the Lease Agreement;

      f)     That Plaintiff have judgment against Defendant pursuant to Va. Code § 8.01-27.1 (A) in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 Dollars ($20,833.33) together with (i) legal interest from the date of the check, (ii) the protest or bad check return fee charged to the Plaintiff by his bank, (iii) a processing charge of $50, and (iv) reasonable attorney's fees;

      g)     That the Court award Plaintiff his costs and reasonable attorney's fees expended in this action pursuant to Part 21 of the Lease Agreement;

      h)     That he be awarded such other and further relief as the Court deems appropriate.

/s/ Blackwell N. Shelley, Jr.
Blackwell N. Shelley, Jr. (VSB No. 28142)
shelley@scs-work.com
Tim Schulte (VSB No. 41881)
schulte@scs-work.com
Shelley Cupp Schulte, P.C.
3 W. Cary St.
Richmond, Virginia 23220
Tel: (804) 644-9700
Fax: (804) 278-9634
*Attorneys for Plaintiff, Mark T. Motley*